UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SALEEM MUHMMAUD, Plaintiff, | : | |
| v. | : | PRISONER CASE NO. 3:08-cv-01199 (VLB) |
| BRIAN MURPHY ET AL., Defendants. | : | June 30, 2009 |

RULING ON DEFENDANTS' MOTION TO DISMISS [Doc. #49]

The plaintiff, Saleem Muhmmaud, commenced this action pro se against the defendants, Brian Murphy, Mary Marcial, Wayne Choinski, Fred Levesque, Ellen St. John, Major Rose, Major Light, Major Rodriguez, Dennis Oglesby, Jeffrey McGill, CTO Brown, Counselor McEwan, Yolanda Ortero, John Sieminski, Captain Travaglin, James Dzurenda, and Counselor McLeod. The plaintiff asserts federal claims pursuant to the Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendments as well as several state constitutional claims. The defendants move to dismiss all of the plaintiff's claims. For the reasons that follow, the motion to dismiss is GRANTED in part and DENIED in part.

## I. Standard of Review

When considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Flores v. Southern Peru Copper Corp., 343 F.3d 140, 143 (2d Cir. 2003). The court considers not whether the plaintiff ultimately will prevail, but whether

**he has stated a claim upon which relief may be granted so that he should be entitled to offer evidence to support his claim. See York v. Association of Bar of City of New York, 286 F.3d 122, 125 (2d Cir. 2002). In reviewing a motion to dismiss, the Second Circuit "ordinarily require[s] the district courts to give substantial leeway to pro se litigants." Gomes v. Avco Corp., 964 F.2d 1330, 1335 (2d Cir. 1992).**

## II. Facts

**The plaintiff was transferred from Northern Correctional Institution to MacDougall-Walker Correctional Institution on November 28, 2006, after completing the Chronic Discipline Program. On December 14, 2006, he received a Class A disciplinary report for interfering with safety and security. He pleaded guilty to the disciplinary report and served sanctions of confinement in segregation for seven days followed by confinement to quarters. Correctional policy provides that an inmate released from the Chronic Discipline Program is on probation for ninety days. If he is found guilty of a Class A disciplinary report during the probationary period, he may be returned to the Chronic Discipline Program. On December 27, 2006, however, the plaintiff was discharged from custody at the conclusion of his sentence. At the time of his discharge, no hearing to determine whether he would return to the Chronic Discipline Program had been scheduled.**

**On January 10, 2007, the plaintiff was re-arrested and confined in the custody of the Connecticut Department of Correction as a pretrial detainee. He**

remained in this status until he was sentenced in July 2008. Upon his readmission, correctional officials prepared a Chronic Discipline reinstatement package. On February 5, 2007, the plaintiff received notice of a Chronic Discipline hearing. The hearing took place on February 7, 2007. The defendant Travaglin, the hearing officer, did not check off the box on the Restrictive Status Report of Hearing for Placement or Removal form indicating that he recommended placement in the Chronic Discipline Program. However, he completed the section requesting reasons for placement, stating "Inmate discharged prior to completion of the CD program - was approved for CD on 12/21/06 due to Step-Down failure. He was readmitted to the DOC on 1/10/07." [Compl. Ex. C, Doc. #42-2, p. 9] The defendant Dzurenda denied the plaintiff's appeal and, on February 22, 2007, the defendant Levesque authorized the plaintiff's placement in the Chronic Discipline Program.

The plaintiff was transferred to the Chronic Discipline Program at Northern Correctional institution on March 27, 2007. He was required to attend groups as part of the program. On April 5, 2007, he progressed to Interval II. The plaintiff states that no correctional guards went into the outside recreational yards with Chronic Discipline inmates in Intervals I and II of the Chronic Discipline Program. Instead, there were electronic intercommunication speakers on the wall and stationary security cameras. There were guards present, however, during outside recreation for inmates in the Administrative Segregation Program.

On April 25, 2007, the plaintiff attended morning recreation with six other

**inmates. The plaintiff alleges that another inmate made disrespectful comments to him. The plaintiff twice told the inmate to shut up and moved away from him. The other inmate physically attacked the plaintiff. During the struggle, the plaintiff secured a weapon that the other inmate had brought to the recreation yard and swung the weapon at the other inmate. Correctional officers did not immediately respond to the assault. The plaintiff suffered lacerations on his upper forehead, right eye, lips, and knees, and swollen lip and eyes. As a result of the incident, the plaintiff received disciplinary reports for fighting and possession of contraband. He was found guilty of both charges.**

## III. Discussion

**The defendants move to dismiss the complaint on the grounds that: (1) the Fifth and Eighth Amendments do not apply to pretrial detainees; (2) the plaintiff's claims under the Fourteenth Amendment to the U.S. Constitution and Article first, § 9, of the Connecticut Constitution regarding his placement in the Chronic Discipline Program are legally insufficient; (3) he fails to state a claim for involuntary servitude under the Thirteenth Amendment; (4) the claims under Article first, §§ 8 & 20 of the Connecticut Constitution are legally insufficient; and (5) the plaintiff fails to state a federal or state equal protection claim.**

### A. Claims under the Fifth and Eighth Amendments

**The Fifth Amendment pertains to criminal charges and prohibits the federal government from violating a person's due process rights. See Public Utilities Comm'n v. Pollak, 343 U.S. 451, 461 (1952); Birdsall v. City of Hartford, 249 F.**

**Supp. 2d 163, 170 (D. Conn. 2003). The plaintiff's claims here concern conduct allegedly committed by state employees at state correctional facilities. Thus, the Fifth Amendment does not apply. The defendants' motion to dismiss is granted as to all Fifth Amendment claims.**

**The Eighth Amendment, which protects inmates against cruel and unusual punishment, may be invoked only after an individual has been adjudged guilty of a crime. See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979) (noting that a claim asserted by a pretrial detainee is reviewed under the Due Process Clause of the Fourteenth Amendment). The defendants argue that all Eighth Amendment claims must be dismissed because the plaintiff alleges that he was a pretrial detainee at all times relevant to his claims. In opposition, the plaintiff states that he was a sentenced inmate prior to his discharge on December 27, 2006. Although the plaintiff is correct, his claims concern the period after his re-incarceration in 2007 while he was a pretrial detainee. The defendants' motion to dismiss is granted as to all Eighth Amendment claims.**

**The Court will consider any claims asserted pursuant to the Fifth or Eighth Amendments as brought under the Fourteenth Amendment.**

## B. Claim for Involuntary Servitude under the Thirteenth Amendment

**The plaintiff contends that forced participation in programs in the Chronic Discipline Program constitutes involuntary servitude in violation of the Thirteenth Amendment.**

**The Thirteenth Amendment states in pertinent part that "[n]either slavery or**

involuntary servitude, except as punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. The Supreme Court has conceded that "[w]hile the general spirit of the phrase 'involuntary servitude' is easily comprehended, the exact range of conditions it prohibits is harder to define." United States v. Kozminski, 487 U.S. 931, 942 (1988). "[T]o state a claim under the Thirteenth Amendment, a plaintiff must demonstrate that he has been subjected to compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results." Ford v. Nassau County Executive, 41 F. Supp. 2d 392, 401 (E.D.N.Y. 1999) (quoting Butler v. Perry, 240 U.S. 328, 332 (1916)). In Ford, the court held that requiring a pretrial detainee to choose between distributing food to other inmates without pay or being confined in segregation did not violate the Thirteenth Amendment. Id. at 397-98.

Participation in programs is not work. Thus, it does not constitute involuntary servitude. The defendants' motion to dismiss is granted as to the Thirteenth Amendment claim.

C. Federal and State Due Process Claims

The plaintiff alleges that he was denied substantive due process when, upon readmission to the Department of Correction, he was reassigned to the Chronic Discipline Program as a result of events that occurred before he was discharged. He also contends that he was not afforded procedural due process at the disciplinary hearing following the assault in the recreation yard.

## 1. Substantive Due Process

The plaintiff's claim regarding his transfer to the Chronic Discipline Program is based on the Supreme Court's holding that pretrial detainees have a substantive due process right not to be housed under conditions of confinement that amount to punishment. See Bell v. Wolfish, 441 U.S. at 535-37. Not every restriction imposed during pretrial detention, however, constitutes punishment in the constitutional sense. Unless there is evidence of an expressed intent to punish on the part of correctional officials, a particular condition or restriction that is reasonably related to a legitimate governmental objective, such as maintaining institutional order and security, will not be considered punishment. See id. at 538-40; see also Arar v. Ashcroft, 532 F.3d 157, 190 (2d Cir. 2008) (rejecting detainee's substantive due process claim because detainee did not allege that conditions of confinement were imposed with punitive intent and that conditions were not reasonably related to legitimate government purpose).

The plaintiff alleges that his transfer to the Chronic Discipline Program was not related to any behavior following his readmission in January 2007, but was punishment for incidents occurring prior to his discharge in December 2006. He alleges that he was informed that the transfer was pursuant to department policy, but states that he could find no reported policy. In addition, he states that he was not informed in December 2006, when he completed the Chronic Discipline Program, that he would be on probation for 90 days.

The plaintiff has attached to his complaint a copy of a May 21, 2007 letter

from the defendant Light explaining his return to the Chronic Discipline Program. Light stated that the plaintiff received a Class A disciplinary report while in the Step-Down Program. Pursuant to Administrative Directives 6.14 and 9.4, inmates leaving Northern Correctional Institution are placed on a 90-day probationary period. Behavioral violations during this period may result in the inmate's return to the previous Administrative Classification. [Doc. #42-2, p. 17] Light did not address why a decision made before the plaintiff was discharged, and of which he was unaware, was used to classify him upon readmission or identify any authority supporting this action.

The plaintiff has not provided the versions of the referenced directives in effect in January 2007. He alleges, however, that the version of the directive in effect at the time of his transfer did not reference continuing a previous Chronic Discipline Program placement upon readmission. He also alleges that he had completed the Chronic Discipline Program before he was discharged and was not made aware of any actions to return him to the program before his discharge date. Thus, he argues that, in 2007, the defendants were not relying on department policy for his transfer but were punishing him.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability

**requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). The Court concludes that the plaintiff has met this standard. Thus, the defendants' motion to dismiss is denied as to the substantive due process claim and the associated state law claim pursuant to Article first, § 9.**

**2. Procedural Due Process**

**The defendants argue that the plaintiff was afforded procedural due process in connection with the disciplinary hearing. In arguing that the plaintiff has no protected liberty interest in his classification or place of confinement, defendants refer the Court to cases concerning convicted prisoners, not pretrial detainees. Although the plaintiff relies on Bell in his opposition to the motion to dismiss, this reliance is misplaced. See Block v. Rutherford, 468 U.S. 576, 591 n.12 (1984) (noting that no procedural due process claim was raised in Bell v. Wolfish).**

**A pretrial detainee's rights at a disciplinary hearing are set forth in Wolff v. McDonnell, 418 U.S. 539 (1974). The pretrial detainee is entitled to written notice of the charges at least 24 hours in advance of the hearing, the ability to call witnesses where not hazardous to institutional safety and correctional goals, the ability to present documentary evidence, and a statement of reasons for the disciplinary action taken. Id. at 564-66.**

**The plaintiff argues that his advocate was not effective. An inmate has a limited right to assistance at a disciplinary hearing. See Silva v. Casey, 992 F.2d**

**20, 22 (2d Cir. 1993) (holding that advocate is not obligated to go beyond specific instructions of inmate; doing more would be acting as counsel in a prisoner disciplinary proceeding where prisoner has no right to counsel); Eng v. Coughlin, 858 F.2d 889, 897-98 (2d Cir. 1988) (inmates in restrictive housing entitled to assistance of advocate to prepare for disciplinary hearing). At this stage of litigation, the Court cannot determine whether the plaintiff received the assistance to which he was entitled. Accordingly, the defendants' motion to dismiss is denied without prejudice as to the procedural due process claim.**

**3. State Due Process Claims**

**The plaintiff references Article first, § 8, of the Connecticut Constitution in connection with his due process claims. This section, however, is entitled "Rights of accused in criminal prosecutions." As this case does not include any claims regarding a state criminal prosecution, any claims pursuant to Article first, § 8, are misplaced. See Tocasco v. Milford Bd. of Educ., No. CV074008593, 2007 WL 2755888, at *3 (Conn. Super. Ct. Aug. 31, 2007) (rejecting any claim pursuant to Article first, § 8, in case concerning right to education); Doe v. Maher, 40 Conn. Supp. 394, 422 n.31, 515 A.2d 124, 148 n.31 (1986) ("There are two due process clauses in article first. Section 8 is generally applied to criminal matters"). The defendants' motion to dismiss is granted as to all claims pursuant to Article first, § 8, of the Connecticut Constitution on the ground that these claims are legally insufficient.**

**D. Failure to Protect and Fourth Amendment Claims**

**The plaintiff argues that the defendants failed to protect him from assault by another inmate because they did not assign correctional staff to go into the recreation yard with the inmates in the Chronic Discipline Program. He alleges that the defendants were aware of the assaultive tendencies of the inmates. Also, in the first paragraph of the amended complaint, the plaintiff states that he brings this action pursuant to the Fourth Amendment. The defendants have not addressed the failure to protect claim or any possible Fourth Amendment claims. Thus, these claims remain pending.**

**E. Federal and State Equal Protection Claims**

**The plaintiff asserts two equal protection claims: (1) unlike other pretrial detainees, he was confined in the Chronic Discipline Unit; and (2) correctional officers were not present in the recreation yard for Chronic Discipline inmates while they are present in the recreation yard for Administrative Segregation inmates.**

**The Equal Protection Clause protects prisoners from invidious discrimination. This provision does not mandate identical treatment for each individual; rather it requires that similarly situated persons be treated the same. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439-40 (1985). To prevail on an equal protection claim of racial discrimination, the plaintiff must prove that he was treated differently from other similarly situated individuals and that the reason for the different treatment was based on "impermissible**

considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000) (quoting LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980)).

In his first equal protection claim, the plaintiff alleges that inmates in the Chronic Discipline Program are treated differently from inmates in the Administrative Segregation Program with regard to the presence of correctional officers in the recreation yard, even though both groups include inmates identified as violent or difficult to control. He further alleges that the defendants' actions demonstrate a disregard for the safety of inmates in the Chronic Discipline Program. The defendants do not address this claim in their motion to dismiss. The Court concludes that the plaintiff should be permitted to proceed further on this claim to present evidence of impermissible considerations for this distinction.

The plaintiff's second equal protection claim is that, unlike other pretrial detainees, he was transferred to the Chronic Discipline Program. The plaintiff references no other inmates in this claim. Thus, the Court assumes that the plaintiff's equal protection claim is based on a "class of one" theory. To state a valid equal protection "class of one" claim, the plaintiff must allege that (1) he has been intentionally treated differently from others similarly situated, and (2) there is no rational basis for the difference in treatment. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); see also Kerrigan v. Commissioner of Public

Health, 289 Conn. 135, 158, 957 A.2d 407, 421-22 (2008) (applying same standard under state equal protection clause). To prevail on a "class of one" claim, the plaintiff must allege an "extremely high" level of similarity with the person to whom the plaintiff is comparing himself. Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005). The plaintiff's circumstances must be "prima facie identical" to the other person's. Id. at 105. Here, the plaintiff has identified no other pretrial detainee who was discharged under similar circumstances and who was not transferred to the Chronic Discipline Program upon readmission. Thus, he has not shown the requisite level of similarity with other pretrial detainees. The defendants' motion to dismiss is granted with regard to the second equal protection claim.

F. Declaratory Relief

For relief, the plaintiff seeks entry of a declaratory judgment and injunction as well as damages. Declaratory relief is intended to enable parties to adjudicate claims before either side suffers great damages. See In re Combustible Equip. Assoc., 838 F.2d 35, 37 (2d Cir. 1988). Declaratory relief operates prospectively; it is inappropriate for past acts because all damages already have accrued. See National Union Fire Ins. Co. v. Int'l Wire Group, Inc., No. 02 Civ. 10338, 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003). This action concerns incidents that occurred in 2007. Thus, declaratory relief is inappropriate. The plaintiff's request for declaratory relief is dismissed pursuant to 28 U.S.C. § 1915A.

**IV. Conclusion**

**The defendants' Motion to Dismiss [Doc. #49] is GRANTED as to all claims pursuant to the Fifth, Eighth and Thirteenth Amendments to the U.S. Constitution and Article first, § 8, of the Connecticut Constitution, as well as the plaintiff's state and federal equal protection claim regarding placement in the Chronic Discipline Program. The motion is DENIED in all other respects. The request for declaratory relief is DISMISSED pursuant to 28 U.S.C. § 1915A.**

**The case will proceed on the plaintiff's Fourteenth Amendment substantive due process claim and the associated state law claim under Article first, § 9; the Fourteenth Amendment procedural due process claim; the Fourteenth Amendment equal protection claim as a result of the decision not to assign correctional officers to the Chronic Discipline recreation yard and the associated state law claim under Article first, § 20; the Fourteenth Amendment failure to protect claim; and any Fourth Amendment claims.**

**IT IS SO ORDERED.**

**/s/**
**Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: June 30, 2009.**